## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | |
|---|---|
| **BRANDY LEIGH DYE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.:  6:15-CV-00237-VEH |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Brandy Leigh Dye ("Ms. Dye") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for Disability Insurance Benefits ("DIB"). Ms. Dye timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g). For the following reasons, the court **AFFIRMS**.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Dye was forty years old at the time of her hearing before the Administrative Law Judge ("ALJ"). *Compare* Tr. 171 *with* Tr. 43 . She has completed

the ninth grade. Tr. 50. Her past work experience includes employment as a grinder and furniture sander. Tr. 88. She claims she became disabled on August 1, 2011, due to back and neck problems. Tr. 171, 102. Her last period of substantial work ended in August 2008, though she continues to clean offices on a part-time basis. Tr. 218, 68-69. On July 10, 2012, Ms. Dye protectively filed a Title II application for a period of disability and DIB. Tr. 28. On August 28, 2012, the Commissioner initially denied her application. *Id.* Ms. Dye timely filed a written request for a hearing on October 5, 2012. *Id.* The ALJ conducted a hearing on the matter on June 5, 2013. *Id.* On July 24, 2013, she issued her opinion concluding Ms. Dye was not disabled and denying her benefits. Tr. 25. Ms. Dye timely petitioned the Appeals Council to review the decision on August 6, 2013. Tr. 24. On January 9, 2015, the Appeals Council issued a denial of review on her claim. Tr. 1.

Ms. Dye filed a Complaint with this court on February 9, 2015, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on June 18, 2015. (Doc. 8). Ms. Dye filed a supporting brief (Doc. 10) on August 12, 2015, and the Commissioner responded with her own (Doc. 11) on September 1, 2015. With the parties having fully briefed the matter, the court has carefully considered the record and **AFFIRMS** the decision of the Commissioner.

## **STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[1] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;

(2)  whether the claimant has a severe impairment;

---

[1] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of March 26, 2015

    (3)    whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

    (4)    whether the claimant can perform his or her past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ made the following findings:

1.    Ms. Dye met the insured status requirements of the Social Security Act through December 31, 2011. Tr. 30.

2.    She had not engaged in substantial gainful activity since August 1, 2011, the alleged disability onset date, through her last insured date of December 31, 2011. *Id.*

3. She had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, history of acute episodes of bronchitis, and anxiety disorder. Tr. 31

4. She did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

5. She had the residual functioning capacity ("RFC") to occasionally lift and carry up to twenty pounds and frequently lift and/or carry up to ten pounds. She can stand and/or walk in combination, with normal breaks, for at least six hours during an eight hour workday and sit, with normal breaks, for up to eight hours during an eight hour workday. She can occasionally climb ramps and stairs and should never climb ladders, ropes or scaffolds. The claimant can frequently balance, occasionally stoop, kneel, crouch, and crawl. She should not be required to perform push/pull movements or operate foot controls. She should avoid concentrated exposure to extreme cold and working in areas of vibration. She should avoid concentrated exposure to pulmonary irritants. She should avoid exposure to industrial hazards. She can perform simple routine tasks requiring no more than short simple instructions and simple work related decision making with few work-place changes. She can have frequent interactions with co-workers and supervisors and members of the general public. Tr. 32.

6. She was unable to perform any past relevant work. Tr. 36.

7. She was 39 years old, which is defined as a younger individual age 18-49, on the date last insured. *Id.*

8. She has a limited education and is able to communicate in English. *Id.*

9. Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that she was "not disabled," whether or not she had transferable job skills. *Id.*

10. Considering her age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that she could perform. *Id.*

11. Ms. Dye had not been under a disability, as defined in the Social Security Act, from August 1, 2011, through the date last insured. Tr. 37.

## ANALYSIS

**I. INTRODUCTION**

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[2] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Ms. Dye urges this court to reverse the Commissioner's decision to deny her benefits on three grounds. First, she claims that the ALJ improperly discounted her personal testimony of her pain level. (Doc. 10 at 11-12). Second, she claims that the hypothetical questions posed to the VE were improper because they failed to take into

---

[2] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

7

account her back brace and her bladder problems. (Doc. 10 at 13-14). Third, Ms. Dye claims that the ALJ failed to develop the record by not ordering an additional consultative examination before making her decision to exclude Ms. Dye's claimed bladder impairment in the hypothetical questions. (*Id.* at 14).

## II. THE ALJ'S DECISION TO DISCOUNT MS. DYE'S SUBJECTIVE LEVEL OF PAIN AND OTHER SYMPTOMS IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

In determining whether to credit a claimant's subjective testimony of pain or other symptoms, the Eleventh Circuit pain standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

A claimant's statements about pain or other symptoms do not alone establish disability. *See* 20 C.F.R. § 404.1529(a) ("[T]here must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that you are disabled."); 20 C.F.R. § 416.929(a) (same). However, "[a] claimant's

subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote*, 67 F.3d at 1561 (citing *Holt*, 921 F.2d at 1223). When an impairment that could reasonably be expected to produce the symptom(s) alleged has been shown, the intensity and persistence of the symptom(s), such as pain, will be evaluated based on all the evidence. *See* 20 C.F.R. § 404.1529(c) (setting forth factors that can be used in evaluating pain); 20 C.F.R. § 4016.929(c) (same). Further, "[i]f the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62.

Ms. Dye reportedly suffered from chronic cervical and lumbar pain. (Tr. 255, 259). In applying the Eleventh Circuit pain standard, the ALJ confirmed the existence of degenerative disc disease that would cause some degree of cervical and lumbar pain, but concluded that objective medical evidence did not confirm the alleged severity of Ms. Dye's pain and her other subjective symptoms. *See* Tr. 33 ("The objective medical evidence . . . is inconsistent with allegations of disabling levels of pain and other subjective complaints prior to the expiration of her insured status.").

The ALJ discounted Ms. Dye's claimed disabling pain level on several different grounds. One factor she relied upon was medical evidence that contradicted the degree of Ms. Dye's subjective symptoms. For example, on December 7, 2011,

9

a nerve connection test was performed by Farouk Raquib, M.D. ("Dr. Raquib") (Tr. 288-94, 259) and the results were "essentially . . . normal" for Ms. Dye's upper extremities. *See* Tr. 33 (ALJ's relying upon results of nerve connection study); *see also* Tr. 308 (Dr. Raquib's indicating on August 16, 2012, that "[n]erve conduction study was essentially unremarkable on December 7, 2011"). When physically examined by Dr. Raquib on November 29, 2011, Ms. Dye had a tenderness in her lumbar muscles, but generally was not "in distress" and the review of her neck was "unremarkable." Tr. 254; *see* Tr. 33 (ALJ's referencing physical examination results).

In fact, in contrast to Ms. Dye's pain testimony during her June 2013 hearing, the record reveals a downward trend in Ms. Dye's pain intensity as reported to Dr. Raquib. Ms. Dye's self-evaluation of her pain was a 6 of 10 on August 6, 2012 (Tr. 310), improved to a 4 of 10 on October 8, 2012 (Tr. 326), and improved to a 3 of 10 on March 29, 2013. Tr. 357. *See also* Tr. 34 (ALJ's inclusion of Ms. Dye's self-evaluation of pain in decision). Though unmentioned by the ALJ, on December 4, 2012, Dr. Raquib reported that Ms. Dye had "increased cervical muscle tone" and "full range of neck movement without significant pain."[3] Tr. 336. All of this medical evidence substantially supports the ALJ's discounted pain determination.

---

[3] Despite this observation concerning Ms. Dye's insignificant level of pain in her neck, Dr. Raquib nonetheless conclusorily indicated on this same report that her "[p]ain is disabling[.]" Tr. 336.

Evidence of other inconsistencies supports the ALJ's application of the Eleventh Circuit pain standard as well. For example, Ms. Dye testified during her hearing in 2013 that she was able to work for at least 1.5-2 hours per day cleaning offices for a lumber yard, including dusting and emptying garbage cans. Tr. 58, 68-69, 182; *see* Tr. 34 ([T]he claimant testified at the hearing that she was able to start cleaning offices for 9-10 hours per week starting in April 2013 . . .")[4] Though not constituting substantial gainful employment, this part-time work is still a relevant factor to consider in evaluating Ms. Dye's reported level of pain. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (cleaning mobile homes part of substantial evidence supporting decision to discount subjective pain evidence).

Prior to this part-time cleaning work, Ms. Dye testified that she applied for and received unemployment compensation until exhausting it in June 2011. Tr. 83. The ALJ pointed out that, in applying for unemployment benefits, Ms. Dye was required under Alabama law to certify that she "was 'physically and mentally able to perform work of a character which [s]he is qualified to perform by past experience or training and [s]he is available for such work . . . '" Tr. 35. As this court has previously held,

---

[4] The ALJ relied on Ms. Dye's hearing testimony to note that she worked at least "9-10 hours per week" (Tr. 34, 35), but at other points in the record it appears that Ms. Dye may have been working more. At different points, she reported to Dr. Raquib that she was working 20 hours per week (Tr. 353) and 50 hours per week. *See* Tr. 266 ("She is having more breakthrough pain as she is now working 50 hours a week."). The court's conclusions are based on the lower amount that the ALJ used.

11

while receipt of unemployment benefits standing alone is not sufficient to discredit a claimant's subjective complaints about pain and other symptoms, it is a relevant factor "if unemployment compensation is not the only reason supporting the ALJ's negative credibility finding." *Sasnette v. Colvin*, No. 5:14-CV-0362-VEH (Doc. 13 at 17) (N.D. Ala. July 21, 2015) (emphasis omitted).

Ms. Dye also took care of her three-year old granddaughter. Tr. 62; *see* Tr. 34 (ALJ's observing that Ms. Dye "has been the primary caregiver for her infant granddaughter"). Evidence that Ms. Dye performed household chores such as laundry, shopped for groceries and household items weekly, and experienced no problems with handling her personal care also supports the ALJ's pain conclusion. *See* Tr. 208-210 (detailing daily activities); *see* Tr. 34 (ALJ's pointing out that Ms. Dye "was able to live independently in her own residence and care for her personal needs without assistance"). It is reasonable to conclude, as the ALJ does, that if her level of pain was as high as she claimed, Ms. Dye would not have been able to perform these physically-demanding tasks on a sustained basis. *See* Tr. 34 ("The claimant's daily activities are . . . inconsistent with disabling levels of pain and other subjective complaints."). Though such daily actions–in short duration–are not sufficient evidence alone to discount a claimant's subjective pain testimony, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), they can still be considered as part

of the overall substantial evidence inquiry. *See Wilson*, 284 F.3d at 1226-27 (using daily activities, with other factors, as sufficient evidence to discount subjective evaluation of pain). Thus, considering both the medical and non-medical evidence, substantial evidence supports the ALJ's discrediting of Ms. Dye's claimed level of pain and other subjective symptoms.

### III. THE ALJ'S DECISION TO EXCLUDE THE BACK BRACE AND BLADDER PROBLEMS IN HER HYPOTHETICAL QUESTIONS TO THE VOCATIONAL EXPERT WAS BASED ON SUBSTANTIAL EVIDENCE.

In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question that comprises all of the claimant's impairments. *Wilson*, 284 F.3d at 1227 (11th Cir. 2002). An ALJ, however, is "not required to include findings in the hypothetical that the ALJ ha[s] properly rejected as unsupported." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004); *see also Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) ("The characteristics that the administrative law judge omitted are among those that Ingram alleged to suffer but were either not supported by her medical records or were alleviated by medication.").

Ms. Dye reported on her functional assessment signed on August 6, 2012, that she was prescribed a back brace "about 6 months ago" or in February 2012. Tr. 213.

Ms. Dye's medical record reflects that the back brace was actually prescribed by Dr. Raquib on November 6, 2012 (Tr. 333), nearly a year after her date last insured of December 31, 2011. Tr. 30. When the ALJ questioned Ms. Dye about the brace, she indicated that it was prescribed after she fell in the latter part of 2012. Tr. 70. While Ms. Dye was not wearing the brace during her hearing, she testified that she wears it when she "wash[es] a load of clothes" or "when [she] work[s] in the evening." Tr. 70.

The ALJ appropriately omitted any reference to a back brace from the hypothetical questions as this medical evidence falls significantly beyond the date last insured, including even the apparent triggering event resulting in Ms. Dye's need for the back brace. *Cf. Saxon v. Colvin*, No. 1:14-CV-782-VEH, 2015 WL 4999700, at *6 (N.D. Ala. Aug. 21, 2015) (finding no error in ALJ's foregoing request for medical records post-dating period of disability by five years); *id.* ("Mrs. Saxon has . . . failed to give any explanation of how testing conducted in 2011 would have yielded information about her mental condition five to ten years prior (*i.e.* in the period between her alleged onset of disability and her date last insured)."); *cf. also Leiter v. Astrue*, No. 5:08-CV-1453-VEH, (Doc. 16 at 15) (N.D. Ala. Aug. 24, 2009) ("While these records [post-dating the ALJ's decision] may impact any future claims to benefits by Ms. Leiter, they are not chronologically relevant to her previously filed DIB and SSI claims.").

Ms. Dye does not cite to any record evidence establishing that a medical provider considered possibly fitting her for a back brace prior to her date last insured or at any other time until it was formally prescribed by Dr. Raquib in November 2012. Ms. Dye also does not explain why the prescription for the brace–tied to a fall occurring around that same time–is indicative of a declining lumbar condition before her date last insured nearly one year earlier. *Cf. Ward v. Astrue*, No. 300-CV-1137-J-HTS, 2008 WL 1994978, at *4 (M.D. Fla. May 8, 2008) ("Evidence post-dating an individual's insured status may be relevant and properly considered <u>if it bears upon the severity of the claimant's condition before the expiration of his or her insured status</u>.") (emphasis added); *cf. also* Tr. 35 (ALJ's pointing out that "there is little to any evidence of a significant deterioration in the claimant's medical condition since that layoff and the claimant's date last insured of December 31, 2011."). Therefore, the record does not substantiate that Ms. Dye's back brace is relevant to the period before her date last insured and the ALJ did not err when she omitted it from her hypothetical questions.

The ALJ also found that Ms. Dye had not shown that she was suffering from a prolapsed bladder at any time and, therefore, certainly not by the date last insured. Tr. 31. As such, the ALJ was not required to include a diagnosis of prolapsed bladder in her hypothetical questions. Her decision to omit it is supported by substantial

evidence; more accurately, it is supported by the complete lack of medical evidence within the record that confirms its existence. Though Ms. Dye reported that her bladder had "fallen" (Tr. 77), the ALJ found that no doctor in her medical record had diagnosed this or found any problem with Ms. Dye's bladder. In fact, prior to her administrative hearing, Ms. Dye routinely reported the absence of any urinary problems. *See, e.g.,* Tr. 270 ("patient denies frequency, urgency. . ."); *see also* 254, 258, 262, 266, 274 (other examples of similar reports to her doctors); *but see* Tr. 77 (Ms. Dye's testimony before ALJ about having urinary issues). Further, when Ms. Dye was examined by Wilton R. Holman III, M.D. ("Dr. Holman"), he expressly found her "bladder [to be] unremarkable." Tr. 319. Therefore, in the absence of any medical documentation indicating that Ms. Dye had a prolapsed bladder, especially during the period before the date last insured, the ALJ did not err by excluding this claimed but undiagnosed condition from her hypothetical questions to the VE.

### IV. THE ALJ DID NOT NEGLECT HER DUTY TO DEVELOP THE RECORD BY NOT ORDERING AN ADDITIONAL CONSULTATIVE EXAMINATION.

Ms. Dye alternatively argues that even if the ALJ did not err by failing to include a prolapsed bladder in the hypothetical questions, the ALJ still should have sent her for an additional consultative examination to determine the validity and vocational impact of her claimed bladder condition. (Doc. 10 at 14). The ALJ has a

duty to develop the record fully and fairly. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (*citing Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997)). In order to be supported by substantial evidence, the ALJ must have before her sufficient facts upon which to make an informed decision. *Ford v. Sec. of Health & Human Serv.*, 659 F.2d 66, 69 (5th Cir. 1981).

The Regulations permit the ALJ to order a consultative examination when the claimant's medical sources cannot or will not give sufficient medical evidence regarding the claimant's impairment to make an informed decision about disability. 20 C.F.R. § 404.1517. Further, the Eleventh Circuit has recognized that "[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Reeves v. Bowen*, 841 F.2d 383, 385 (11th Cir. 1988) (citing *Ford*, 659 F.2d at 69); *see also Caulder v. Bowen*, 791 F.2d 872, 878 (11th Cir. 1986) (requiring the ALJ to order a consultative examination when it is recommended by a physician and fills a gap in the material facts). However, the Eleventh Circuit also has held that the ALJ's duty to develop the record does not include ordering a consultative examination when the record contains sufficient evidence upon which the ALJ can make an informed decision. *Ingram*, 496 F.3d at 1269.

For the same reasons the ALJ did not err in omitting Ms. Dye's claimed

prolapsed bladder in her hypothetical questions, there was no duty to develop the record concerning this dubious condition. There was sufficient evidence in the record that the ALJ relied on to make an informed decision about Ms. Dye's disability claim, including specifically the ALJ's finding that the record did not substantiate "the claimant's allegations of a prolapsed bladder to be a medically determinable impairment . . . ." Tr. 31. Prior to her date last insured, Ms. Dye denied having any urinary issues on several different doctor visits. *See, e.g.,* Tr. 270. Further, a doctor examining Ms. Dye's bladder prior to the date last insured found that it was "unremarkable." Tr. 319. In sum, the record is devoid of a prolapsed bladder diagnosis or even confirmation of any bladder difficulties from an acceptable medical source. Given this unambiguous medical information already in the record, the ALJ was under no obligation to order a further medical examination to make an informed decision. The record was developed sufficiently and the ALJ's disability decision was based on substantial evidence.

## **CONCLUSION**

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the decision of the Commissioner is supported by substantial evidence and that she applied proper legal standards in arriving at it. Accordingly, the decision will be affirmed by separate order.

**DONE** and **ORDERED** this the 26th day of July, 2016.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge